## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A COMPLAINT AND ARREST WARRANT

I, Jacob Kotowski, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Based on the facts set forth in this affidavit, there is probable cause to believe that SHERITA BOOKER has violated 26 U.S.C. § 7206(2) (aiding or assisting in the preparation of false and/or fraudulent federal income tax returns). In summary, as described below, BOOKER has held herself out to prepare taxes for a fee, and routinely created fictional businesses with fabricated operations and expenses, as well as other material false statements, in order to fraudulently claim credits and refunds. In July 2023, an undercover agent ("UCA") posing as a client seeking a large refund visited BOOKER while consensually recording their interactions. The UCA explained that the UCA had wage income and had no business or any basis for a Fuel Tax Credit. But BOOKER openly discussed with the UCA that claiming the Fuel Tax Credit in an arbitrary amount was the best way to get a larger refund that the Internal Revenue Service ("IRS") would actually pay, and then revised the UCA's return to claim that Fuel Tax Credit without any basis in fact, and to claim various losses from a non-existent business to reduce the UCA's income, thus fraudulently inflating the UCA's refund by over $5,000, and then causing that return to filed with the IRS.

2. I am a Special Agent of the Internal Revenue Service – Criminal Investigation. The information herein is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; (b) my review of publicly available information; and (c) my review of evidence, including witness statements, records of the Internal Revenue Service, and other documents. Because this affidavit is being submitted for a limited purpose, I have not set forth

each and every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

## PROBABLE CAUSE

### *Background Information – Taxes and Subject Information*

3.　U.S. citizens and resident aliens with gross income that exceeds the total of the standard deduction and personal exemptions for any given year must file a Form 1040, U.S. Individual Income Tax Return (Form 1040). The Form 1040 must be received by the IRS by April 15 of the following year, except when April 15 falls on a weekend or holiday. In those circumstances, Form 1040 is due on the next business day.

4.　Gross income is all income received in the form of money, goods, property, and services that is not exempt from income tax, including any income from sources outside the United States. Gross income also includes income from a business that may be reported on a Schedule C, Profit or Loss From Business ("Schedule C"). Additionally, a return must be filed where there are self-employment net earnings of at least $400.

5.　A Schedule C is used to report self-employment business income and expenses. Schedule C activities are reported on Line 3 of Schedule 1 on Form 1040. Schedule 1, Additional Income and Adjustments to Income, is used to report additional income such as business income, unemployment income, or rental income (among other things), as well as certain adjustments to income like student loan interest or educator expenses. Income and deductions reported on Schedule 1 are aggregated and then reported on Line 8 of Form 1040. This figure is then used in the computation of the taxpayer's total income which is reported on Line 9 of Form 1040.

6.      The Credit for Federal Tax Paid on Fuels ("Fuel Tax Credit") is a refundable tax credit that allows some types of businesses to claim a tax credit for qualified use of certain types of fuels.  The Fuel Tax Credit is not available to most taxpayers, as its eligibility is restricted to off-highway usage, agriculture, boats, buses, and aviation.  This credit is computed using Form 4136 ("Credit for Federal Tax Paid on Fuels"). Line 1 of Form 4136 contains a table listing four categories of nontaxable gasoline use: off-highway business use, farming use, other nontaxable purposes, and exported fuel. Off-highway business use is defined on a publicly available IRS website as fuel used "for equipment, machines, vehicles, and tools that operate on private property, farms, or construction sites, not public roads." The taxpayer enters the number of gallons claimed under any applicable category. That number is then multiplied by the federal fuel tax rate of $0.183 per gallon, and the resulting amount represents the fuel tax paid that the taxpayer may claim as a credit. Lines 2 through 16 list additional types of fuel eligible for the credit, and each is calculated in a manner similar to gasoline on Line 1, though the tax rate varies by fuel type. The amount of the Fuel Tax Credit is then reported on Line 12 of Schedule 3, Additional Credits and Payments ("Schedule 3").  Schedule 3 is used to report additional tax credits and payments that are not entered directly on Form 1040.  These credits and payments directly reduce the amount of tax a taxpayer owes, and in some cases (such as in the Fuel Tax Credit) can result in a larger refund for the taxpayer.

7.      An Electronic Filing Identification Number ("EFIN") is a unique identification number that is specifically assigned to a tax preparation business to uniquely identify the business as an Authorized IRS e-file Provider. Providers need an EFIN to electronically file tax returns. The IRS assigns an EFIN to identify firms that have completed the IRS e-file Application to become an Authorized IRS e-file Provider. After the provider completes the

application and passes a suitability check, the IRS sends an acceptance letter, which includes the EFIN, to the Provider. The tax preparation firm is the owner of the EFIN and the EFIN is linked to the firm's Employer Identification Number ("EIN") or the sole proprietor's Social Security Number.

8.      A Preparer Tax Identification Number ("PTIN") is an identification number assigned to all tax return preparers who are compensated for preparing or assisting in the preparation of all or substantially all of any U.S. federal tax return, claim for refund, or other tax form submitted to the IRS. In the same way that a firm owns an EFIN, each individual tax return preparer owns a unique PTIN.  IRS records show that BOOKER is the owner of a particular PTIN ending 5263.

9.      The processing year is the year the IRS received a filed tax return.  Typically, the processing year is for the prior tax year.  For example, processing year 2026 is for tax returns from the year 2025.  However, taxpayers can file tax returns for even earlier years.  A tax return from tax year 2024 filed in the year 2026 would still be processed under processing year 2026.

### *Investigation Background*

10.      SHERITA BOOKER ("BOOKER") is a resident of Cleveland, Ohio, in the Northern District of Ohio.

11.      BOOKER is a tax return preparer under investigation for crimes related to engaging in a tax refund fraud scheme, specifically, violations of 26 U.S.C. § 7206(2) (aiding or assisting in the preparation of false and/or fraudulent federal income tax returns).  There is cause to believe BOOKER has been preparing and filing false Federal Income Tax returns on behalf of her clients through a mixture of false items to include, but not limited to, false or fictitious Schedules C and false or fictitious Forms 4136 to fraudulently obtain Fuel Tax Credits.

12. BOOKER has an extensive background in tax preparation. In June 2016, she was onboarded as an associate of a national tax return preparation chain. She worked there until April 2017. In processing year 2018, BOOKER was filing tax returns under the name of a "tax services" entity that open-source records show BOOKER owned.

13. BOOKER filed tax returns under this firm name in processing year 2018, as well as processing years 2021 to 2024. During the 2021 through 2024 processing years, BOOKER also filed some returns under another firm name, as well as just her own name. In processing years 2019 and 2020, BOOKER was filing tax returns under a third firm name or her own name. After 2024, BOOKER continued filing returns under a variety of tax firm names, as well as her own name.

### *Undercover Operation in 2023*

14. On July 6, 2023, an undercover agent with the IRS ("UCA"), conducted an undercover operation at BOOKER's then-residence, an apartment on Wheelock Road, in Cleveland, OH ("the Premises"). The following occurred during the operation:

15. In June 2023, the UCA initiated contact with BOOKER on her cellular telephone number, using a covert telephonic device. Following an initial telephone call, the UCA exchanged several text messages with BOOKER to schedule a tax return preparation appointment at the Premises, which is also the business location of BOOKER's tax preparation firm.

16. Per BOOKER's request, the UCA paid a $150 deposit toward the total tax preparation fee of $350 to BOOKER, via CashApp, for the preparation and filing of the UCA's 2022 federal, state, and local individual income tax returns. The UCA and BOOKER continued to exchange text messages leading up to the date and time of the scheduled in-person meeting.

17. Prior to the appointment, the UCA was shown a photo of BOOKER. The UCA later confirmed that the individual they met at the appointment appeared to be BOOKER.

18. On the date of the appointment, July 6, 2023, the UCA was greeted by BOOKER, who was the only person present inside the Premises at that time. The UCA provided BOOKER with a Form W-2 and answered several demographic questions asked by BOOKER. The UCA informed BOOKER that the UCA is single, had no dependents, and did not own any business or rental properties.

19. The UCA did not provide BOOKER with any information, such as business income, gross receipts, or business expenses that would indicate or require BOOKER to prepare a Schedule C with the UCA's tax return. In addition, the UCA did not indicate to BOOKER that the UCA was eligible for or qualified to claim a Fuel Tax Credit.

20. BOOKER prepared and attached a fraudulent Schedule C with the UCA's tax return, claiming that the UCA owned and operated a business under the profession of "All other specialty". BOOKER asked the UCA the following questions: Did the UCA drive the UCA's own car to work; Did the UCA purchase clothes for work; Did UCA buy lunches while at work during week. BOOKER indicated she would claim these as deductible business expenses on a Schedule C. The UCA's Schedule C reported $0 in gross receipts/income, and $3,707 in various non-deductible employee business expenses, such as Tax and Licenses, Travel, and meal expenses. These items resulted in a net business loss for the year of $3,707. The Schedule C net loss ultimately lowered the UCA's reported taxable income and tax due and owing.

21. BOOKER prepared the UCA's 2022 federal personal income tax return using only the UCA's Form W-2 and the Schedule C she created. This resulted in the UCA receiving a refund of $904. BOOKER stated to the UCA that tax credits allowing people to receive

significantly larger refunds in the previous few years were no longer available.  BOOKER stated "This year, no. '21 and '20, yes.  That's what [where] the money was."

22.     Based upon my training and experience, BOOKER appears to be referring to the COVID-19 Paid-Leave Credits that were available to taxpayers in the 2020 and 2021 tax years. BOOKER's quote, from above, was stated in response to the UCA asking her how so many people were able to get multiple thousands of dollars in refunds.

23.     BOOKER subsequently asked the UCA how much money the UCA was looking to get in a refund.  BOOKER stated, "Best-case scenario? How much money was you looking for? That's what I'm asking."

24.     BOOKER indicated that if the UCA was okay with the risk of being audited and losing the refund, she would provide the UCA with some additional credits on the return. BOOKER stated, "This year, Okay. You can get the money for this year, but I'm not going to do it…unless you want to be audit."

25.     BOOKER stated that she could get the UCA several thousands of dollars by claiming the Fuel Tax Credit.  Specifically, BOOKER told the UCA, "I'm going to try and get you a couple more thousand dollars off the fuel credit." BOOKER explained to the UCA that the most reliable way of getting the refund from the Fuel Tax Credit is to list the amount of the taxpayer's adjusted gross income (AGI) calculated on their return, as the number of gallons of gas consumed, on Form 4136.  She told the UCA, "This is your adjusted gross income.  This is the income that you make for a year.  So, take that income and use that (for) fuel."  BOOKER stated that many of her other clients, who used alternative credits, have had their refunds stopped by the IRS.  She stated, "What I've been seeing for this year, the fuel works, the ATI (AGI) works, anything else, they're holding these funds or they're taking (the) credit back."

26. As described above, Form 4136, Credit for Federal Tax Paid on Fuels, is filed with a taxpayer's income tax return to claim the Fuel Tax Credit. Line 1 of Form 4136 is for nontaxable use of gasoline and contains a table listing the qualified nontaxable uses of gasoline. The first option on the table is "off-highway business use." As described in paragraph 6, off-highway business is for fuel that was purchased for business use for equipment, vehicles, and tools that are not operating on public roads. Even though at the beginning of the appointment the UCA told BOOKER that UCA does not own a business, BOOKER prepared Form 4136 and entered the AGI amount reported on the Front Page of the UCA's Form 1040, onto Line 1-A, Non-Taxable Use of Gasoline of the Form 4136, Credit for Federal Tax Paid on Fuels. That is, BOOKER arbitrarily reported that the UCA had purchased and paid taxes on a number of gallons equivalent to the dollar amount of the UCA's AGI of $29,509—claiming a credit of $0.183 per gallon, all for a purportedly non-taxable purpose. This created a refundable Fuel Tax Credit of $5,400, that was subsequently entered on Line 12, of Schedule 3, on the UCA's completed tax return.

27. On July 6, 2023, BOOKER prepared and electronically filed the UCA's 2022 Federal tax return, Form 1040, and state of Ohio tax return, using a computer in the Premises. The Federal tax return filed by BOOKER included the fictitious Schedule C with nondeductible/fraudulent expenses, and the Form 4136 that reported a fraudulent Fuel Tax Credit in the amount of $5,400. These fraudulent items resulted in the UCA's total tax refund to increase from $902 to $5,792.

28. Per BOOKER's request, the UCA paid an additional $200 of tax preparation fees to BOOKER, via CashApp. BOOKER e-mailed the UCA a copy of the federal, state, and local tax returns she prepared and filed after they had been filed. The "Paid Preparer Use Only"

section of the UCA's Form 1040 listed BOOKER as the return preparer. Additionally, the "Paid Preparer Use Only" section of the Form 1040 was signed by BOOKER and included her PTIN ending 5263.

29.     In summary, the undercover operation demonstrated that BOOKER is preparing and filing false tax returns and prepared a clearly fraudulent return based on fabricated information used to obtain a vastly inflated refund for the UCA, in exchange for a fee to be paid to BOOKER.

### Subsequent Activity

30.     In September 2023, IRS-CI Special Agents confronted BOOKER at the Premises, and informed her she was the subject of a criminal investigation regarding her tax preparation activities.

31.     In February 2024, BOOKER was sent a letter from the Internal Revenue Service, stating that she had been expelled from participation in the IRS e-File program due to fraudulent returns being filed utilizing her EFIN numbers.

32.     A review of 2026 IRS records revealed that BOOKER's PTIN ending 5263, is currently being used to file tax returns for clients. As of April 1, 2026, BOOKER has filed 119 tax returns in processing year 2026 under her PTIN, with each of these returns requesting a refund. The total amount of tax refunds requested based on the filing of these 119 returns is $729,884.

33.     Further inspection of these 119 tax returns revealed the reporting of suspicious items that, based on my training and experience and review of prior returns filed by BOOKER in this investigation, are indicative of BOOKER continuing to use fraudulent refund schemes. Examples include the following:

a.      105 of the 119 tax returns reported a Schedule C business, which is an unusually large proportion of returns with Schedule C businesses.

b.      64 of the 105 Schedule C businesses reported a net loss. The taxpayers for all 64 returns containing a Schedule C net loss also reported wages earned from an employer. Reporting a Schedule C business loss reduces a taxpayer's taxable income and qualifies them for a refund they may not have been otherwise eligible to receive.

c.      41 out of 105 Schedule C businesses reported a profit (one of these 41 returns reported $0 profit but no loss).  While Schedule C losses often reduce income and inflate refunds, I know from my training and experience that it is also the case for many taxpayers that reporting a fraudulent Schedule C profit can result in a taxpayer earning income-based tax credits they may not have been otherwise eligible to receive, thereby fraudulently inflating the refund.

d.      Out of the 119 returns filed in 2026 using BOOKER's PTIN, 82 listed BOOKER as the return preparer with the preparer address as the Premises.  The EFIN number for these 82 returns was a number ending 7574.  According to IRS records, BOOKER is not an applicant or authorized user of this EFIN, it belongs to an associate of another tax services entity.

e.      26 out of the 119 returns filed in 2026 using BOOKER's PTIN included her name in the preparer information section, but listed the preparer address as one on Oxon Hill Road in Oxon Hill, MD.  The firm name for these 26 returns is yet another "Tax Professionals" entity.  A review of that entity's website shows that BOOKER appears to be preparing returns as an associate of this firm. These 26 returns used two particular

EFINs, and BOOKER was not listed in the application for either of those EFINs as an applicant or registered user. They both belong to individuals associated with that entity.

f.     11 of the 119 returns did not list a preparer name or address, however, they were filed using BOOKER's PTIN ending 5263. No EFIN was recorded on these 11 returns.

## **CONCLUSION**

34.     Based on the foregoing, I respectfully submit that there is probable cause to believe that SHERITA BOOKER has violated 26 U.S.C. § 7206(2), and respectfully request that the Court grant the application and issue the requested arrest warrant.

Jacob Kotowski
Special Agent
IRS-CI

This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per Fed. R. Crim P. 4.1, 41(d)(3) on this _____ day of April 2026. at 11:00 a.m.

JENNIFER DOWDELL ARMSTRONG
U.S. MAGISTRATE JUDGE